**155-15**    ORIGINAL

No _____

COURT OF CRiminal APPEALS OF TEXAS

NO PD-0155-15

Ginnie Fay Roberts, Appellant

v.

The State of Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 30 2015

Abel Acosta, Clerk

ON Petition for Discretionary Review from

The Tenth Court of Appeals
In No. 10-14-00048-CR Affirming the Conviction
in Cause No. f47843 from the 413th District Court
of Johnson County, Texas

APPELLANTS Petition for
Discretionary Review

FILED IN
COURT OF CRIMINAL APPEALS

JUL 30 2015

Abel Acosta, Clerk

Ginnie Fay Roberts, Pro Se
TDCJ # 1906777
Hobby Unit
742 fm 712
Marlin TX 76661

NO _____

# COURT OF CRIMINAL APPEALS OF TEXAS

Ginnie Fay Roberts, Appellant.

v.

The State of Texas

On Petition for Discretionary Review from

The Tenth Court of Appeals
In No. 10-14-00048-CR Affirming the Conviction
in Cause No. F47843 from the 413th District Court
of Johnson County, Texas

## APPELLANT'S PETITION FOR Discretionary Review

Ginnie Fay Roberts, Pro Se
TDCJ # 1906777
Hobby Unit
742 fm 712
Marlin, Tx 76661



# LIST OF PARTIES AND COUNSEL

Appellant:                          Ginnie Fay Roberts

Trial Judge:                        Hon. William C. Bosworth Jr.

Assistant District Attorney
    at Trial                        Mr. Matt Smid
                                    Mr. Bryan Bufkin
                                    204 S. Buffalo Ave. Suite 209
                                    Guinn Justice Center
                                    Cleburne, Texas 76033

Defense Counsel at trial:           Robert Luttrell II.
                                    4 East Chambers St.
                                    Cleburne Texas 76033

Apellant's Counsel
    on Appeal:                      Lane Rugeley
                                    16. N. Caddo St
                                    Cleborne Tx 76031

Ginnie Fay Roberts Pro Se           Hobby Unit
                                    742 Fm 712  3G114.B
                                    Marlin Tx 76661

Roberts /PDR

# Table of Contents

List of Parties and Counsel

........................................................ i

Table of Contents

........................................................ ii

List of Authorities

........................................................ 1,2

Statement Regarding oral Argument

........................................................ 3

Statement of the Case

........................................................ 3

Points for Review / Argument

........................................................ 1,2

Review

1. Prosecutorial Misconduct by consealing or withholding evidence in favor of the defendent
Review

2. Prosecutrial Misconduct by making statements that are designed to arouse public indignation, making improper or misleading statements to the jury.
Review ........................................................

3. Ineffective Assistance of Council
Review ........................................................

4. Whether the evidence is Legally sufficient to charge apellant for possession of methamphetamines 4-200 with intent to Deliver, when she did not Live there at 7125 Timber Ro Alvarado Texas 76009,

5. The evidence presented at trial is Legally insufficient to support a conviction for Delivery of marihuana to a minor.

6. Insufficient Evidence at trial to support the "Link" Notebook

## Argument

### Ground One

1. The prosecution erred in due process by withholding exculpatory evidence Brady vs. Maryland 373 U.S. 53 (1963) on Carlee Roberts. The School she was attending was actually a private medical treatment facility that caters to troubled teens who have mental issues, Anger issues and they treat Substance abuse. The Center is called the Excel program. Also the prosecution withheld C.R. Character while in CPS custody it was suppressed (Al Limone) which would have proved C.R. not a credible witness. Fed. R. Crim P. 16. Federal Rules of Evidence 405, 406

### Ground Two

2. The prosecution erred in making a statement in trial of " (Page 73 transcription) Actual Quote: IN voir dire, I SAID to you that we want these kind of big punishment ranges in Texas because Texas is so big and we want the local jury to get to voice what they think is right for our community... Then goes on to say AND so we have no recommendation, we just leave it up to you to trust you. Brady vs Maryland 373 U.S. 83 (1963) Hernandez vs State 340 S.W. 3D 55

### Ground Three

3. Appellant was denied examination of All Evidence, witnesses that could have proved the character of C.R. TRial lawyer Failed not getting an Expert Hair analysis witness for Appellant, Kindred v. Con Ichem Inc 650 S.W. 2D 61, Dickey vs State 643 S.W. 2D 386, 389 (Texas Crim) (App 1984)

i (A)

## Argument Con'd

3. Appellant was never offered the plea of 8 years. Trial lawyer Knew of affuday it from the Owner of the home taking full Respons ibity of said drugs and also stated. Appellant and daughter did not live there, per trial lawyer D.A. would not allow notorized aftadavitt - Thompson v.s State 95 v B D 808 Constitution of the U.S. Amendment VI. Article 10 of Universal Declaration of Human Rights Article II of U.D.H.R.

### Ground Four

4. On April 25, 2013 The State of Texas Children Protective services in writing acknowledged Appellant lived at 120 Happy Lane Whintey Texas 76692... Appellant came on to the Scene at 7125 Timber Rd Alvarado Tx 76009 after the house was put on lock down awaiting for a Search warrant. D.A. REFUSED AFFADVIT FROM OWNER Rules of Evidence 901 Vernons Ann Texas Rule Civ. Proc. Rule 143:7 Vernon Am Civ. St. Art-3737e

### Ground 5

5. On April 23, 2013 Appellant was court ordered with a twenty five minute window to take a hair follicle.. (DNA). She tested Negative for THC which contradicts the testimony of C.R. CPS Ms Barker and the prosecution... CR tested positive on a urinalysis from a third party not CPS The prosecution was saying delivery threw transfer (Smoking). Texas Health and Safety C. 5481.122. Adelman v. State. 828 Sw 2D at 421 Colliher. 46 Sw 3 D at 247 EVANS vs. Pollack 793 S.W. 2014 writ granted Constitution of the U.S. 5th Amendment

### Ground Six

6. Prosecution erred in trial and evidence is Legally insuffi cient in the only Link from a notebook. fingerprints are the distinctive pattern of lines on a human fingertip (DNA) the Latent print that was disturbed the Expert witness said he could not say it was Appellants. Prosecution erred in not allowing a handwriting analasis to be done no burden iiB of proof was given - Rules VS Evidence 702-705 Expert Testimony State v. Huddleston 164 S.w. 3D 711

# List of Authorities

1. Adelman v. State 828 S.W.2d 418, 421 G.P. App 46 supra at 847

ii(B)

2. Article 10 of U.D.H.R. (Universal Declaration of Human Rights)

i(B)

3. Article 11 of U.D.H.R. (Universal Declaration of Human Rights)

ii(B)

4. Brady vs. Maryland 373 U.S. 83 (1963)

ii(A)

5. Constitution of the U.S. Fifth Amendment

ii(B)

6. Constitution of the U.S. Sixth Amendment

ii(B)

7. Dickey vs. State 693 S.W.2d 386, 384 (Texas Crim App 1984)

ii(A)

8. Evans vs. Pollock 743 S.W. 2d 1 or was granted

ii(B)

9. Federal Rules Evair 716

ii(A)

10. Federal Rules of Evidence 405, 406

ii(A)

11. Federal Rules of Evidence 901

ii(B)

12. Federal Rules of Evidence 702-705 Expert Testimony

ii(A)

13. Hernandez vs State 340 S.W. 3d 55

ii(A)

Pg 1

14. Kindred vs. Con Chem Inc 650 s.w. 2d 61

    ii (A)

15. State vs. Huddleston 144 s.w. 3d 711

    ii (B)

16. Texas Health and Safety C. 5481.122

    ii (B)

17. Thompson vs. State 95 v3d 504

    ii (B)

18. Vernons Ann Texas Rule Civ proc rule 193.7

    ii (B)

19. Vernon Ann Civ. St. Art 3737 e

    ii (B)

To The Honorable Court of Criminal Appeals:

Comes now Ginnie Fay Roberts, Appellant, Pro Se and files this Petition for Discretionary Review of the opionion of the Court of Appeals which affirmed both convictions in this case.

## Statement Regarding ORAL Argument

Appellant waives oral argument unless desired by this Court

## Statement of the Case

Appellant was convicted in the 413th District Court of Johnson County, Texas. the Hon, William Bosworth, Jr. presiding for Possession of a Controlled Substance with Intent To deliver 4-200 grams (Enhanced) Count One, and Delivery of marijuang to a minor (Enhanced) Count Two. The Jury found apellant guilty of both offenses, and punishment was essesed in the accordence with the law Count One 75 years, Count Two 60 years in the Texas Department of Criminal Justice Inst Divisio

## History of the Case

Appeal was to the Tenth Court of Appeals at Waco, Texas. The judgement of conviction was affirmed on both counts. and opinion rendered on January 8, 2015 No motion for rehearing was filed,

A motion for eytention was filed on feb 3, 2015 and Roberts/P DR granted for April 10 2015. A second motion was filed March 30, 2015 and was granted for May 10th and here comes now the full Petition for Disk review May 10 2015.

## Prayer for Relief

Appellant prays respectfully that upon review of this said document that the Criminal Courts of Appeals either reverse or lower amount of said time and render justice..

Respectfully submitted

Ginnie Fay Roberts

Ginnie Fay Roberts

Hobby Unit 1906777

742 fm 712

Marlin TX 76661

## Certificate of Service

I Ginnie Fay Roberts do hereby certify a true and correct copy of this (PDR) Petition for Discretionary Review to the clerk of the Court of Criminal Appeals P.O. Box 12308 Austin Tx 78711. And a copy of Letter notifying the filing of this Petition for Discretionary Review to District Attorneys office Guinn Justice Center 204 s. Boffalo Cleburne TX 76033 by dropping said documents into U.S. mail Box located on the Hobby Unit (located in Vegetable area) on this 14th Day of July 2015. ...

Ginnie Fay Roberts

Ginnie Fay Roberts Pro Se

# Appendix

1) Opinion of Court of Appeals

2) Owners side of how search warrant was obtained..

3) Search warrant for specifically Possession of marijuana None was found.... or admitted into trial ...

4) Copy of check where task force reimbursed owner of home "Drug money" that was used against ms. Roberts at trial...

5) Copy of Affadavit from owner of home taking full responsibility for drugs... who took 10 years T.D.C. —

Other Proof is located on the additional paper work sent in .. Backing up All my Arguments...

Thank you + God Bless..



# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00048-CR

GINNIE FAY ROBERTS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 413th District Court
Johnson County, Texas
Trial Court No. F47843

## MEMORANDUM OPINION

Ginnie Roberts appeals from her convictions for the offenses of possession of a controlled substance with the intent to deliver and for delivery of marihuana to a child. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(d), 481.122 (West 2010). Roberts complains that the evidence was insufficient to establish that she intentionally or knowingly possessed a controlled substance, was insufficient to establish that she delivered marihuana to a minor, that she received ineffective assistance of counsel, and

that the trial court abused its discretion by admitting a handwritten notebook into evidence because it constituted hearsay.

*Sufficiency of the Evidence*

In her first issue, Roberts complains that the evidence was insufficient for the jury to have determined that Roberts intentionally or knowingly possessed methamphetamine that was found during a search of a residence where Roberts was staying. In her second issue, Roberts complains that the evidence was insufficient for the jury to have found that she delivered marihuana to her daughter because there was no evidence that Roberts had actually transferred marihuana to her daughter. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

## Possession with Intent to Deliver

Roberts complains that the evidence was insufficient for the jury to have found that she intentionally or knowingly possessed methamphetamine that was found during a search of a residence where she was staying. To prove unlawful possession of any controlled substance, "the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010) ("'Possession' means actual care, custody, control, or management.").

Possession is not required to be exclusive. *See Evans*, 202 S.W.3d at 162 n.12. When the defendant is not in exclusive possession of the place where the controlled substance is found, then additional, independent facts and circumstances must affirmatively link the defendant to the substance in such a way that it can reasonably be concluded that the defendant possessed the substance and had knowledge of it. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). In other words, the evidence "must establish, to the requisite level of confidence, that the defendant's connection with the [contraband] was more than just fortuitous," which may be established by direct or circumstantial evidence. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Several factors may help to establish a link between the defendant and the contraband, including (1) the defendant's presence when a search is conducted; (2) whether the substance was in plain view; (3) the defendant's proximity to and the accessibility of the substance; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the

place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12.

Not all of these factors must be proved; rather, it is the cumulative logical force the factors have in proving possession that we must consider. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Additionally, the absence of some of the factors is not evidence of innocence that must be weighed against the factors that are present. *Id*. Rather, they are used to assess the sufficiency of the evidence linking the defendant to the knowing possession of contraband. *See, e.g., Roberson v. State*, 80 S.W.3d 730, 735-36 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Allen v. State*, 249 S.W.3d 680, 694 n.13 (Tex. App.—Austin 2008, no pet.) (explaining that presence or absence of factors "aid appellate courts in determining the legal sufficiency of the evidence in knowing possession of contraband cases").

*Facts*

Roberts's daughter, C.R., had recently come to live with her mother. C.R. informed a counselor at the school that she was attending that she was concerned for her mother who was using methamphetamine. The counselor made a report to the Department of Family and Protective Services, who sent an investigator to speak with C.R. at her school. C.R. told the investigator that she and her mother were living with her mother's boyfriend, David McKinney, and that her mother had given C.R.

marihuana to smoke and had smoked it with her. The investigator contacted the drug task force in Johnson County to assist her in visiting the home.

Two officers accompanied the investigator to the residence of McKinney. McKinney answered the door and allowed them to come into the residence; however, he asked them to leave when they asked if they could search the residence for controlled substances because he was afraid they would find marihuana. The officers instigated the process of procuring a warrant to search the residence. During this time, no one was allowed in the house. McKinney asked if he could leave and was allowed to leave the premises.

An individual later identified as Wayne Gorman was residing in a camper behind McKinney's home. When the officers initiated contact with Gorman, he gave the officers a false name. While the officers were running a search on the name Gorman had given them, a vehicle with Roberts, C.R., and another female arrived at the residence. Roberts advised one of the officers that Gorman's first name was Waylon but she did not know his last name. The officer asked for and received permission to search Roberts's purse, which contained Gorman's driver's license, but no marihuana or controlled substances. The officer then asked Roberts if drugs would be found in the search of the house, and Roberts admitted that marihuana and maybe methamphetamine would be found in the master bedroom.

At some point, the investigator for the Department spoke with Roberts and asked her whether she knew about C.R.'s marihuana use and if Roberts had provided the marihuana to C.R. Roberts admitted that she had given C.R. marihuana for anxiety. When asked if methamphetamine would be found in the search, Roberts stated that she did not think so. Ultimately, Roberts was allowed to leave the scene, but C.R. remained and was later placed into foster care.

When the residence was searched, officers found a small chest on top of a table in the master bedroom which contained 4.15 grams of methamphetamine, cash, scales, and baggies. The officers located a pink notebook that allegedly contained a ledger of drug sales next to the chest. C.R. identified the notebook as belonging to Roberts and that it contained Robert's handwriting. Another baggie containing .19 grams of methamphetamine was found in a dresser drawer that contained women's undergarments that C.R. identified as her mother's clothing. That dresser also had a framed picture of C.R. on top of it. A meth pipe which C.R. said her mother used to smoke methamphetamine was found on top of a woman's jacket in the bedroom as well.

C.R. testified that she told the counselor of her mother's methamphetamine use because she was afraid for her. C.R. testified that the chest and notebook belonged to her mother and that she had observed her mother selling methamphetamine on more than one occasion and had seen her write in the notebook. C.R. had seen her mother

getting methamphetamine out of the chest and putting money into it. C.R. and her mother were both residing at McKinney's residence and her mother slept in the master bedroom with McKinney.

The pink notebook had a post-it note attached inside the front cover with Roberts's name on it. A latent fingerprint was found inside the notebook that an expert testified was "highly probable" to be Roberts's, but was not that of McKinney or Gorman. Inside the notebook the entries "amount," "cash," "fronts," "balance," and "balance with bag" were handwritten which an officer testified were commonly used terms in drug transactions.

C.R. also testified that her mother gave her marihuana because she did not want C.R. to get it from other sources that might contain other drugs. C.R. stated that she and her mother smoked it together, and she knew it was marihuana by its taste and smell, as well as from seeing pictures of it online.

*Analysis*

Roberts argues that there was insufficient evidence to show that she intentionally or knowingly possessed the methamphetamine that was found in the house and was insufficient to link her to the methamphetamine. However, viewing the record in the light most favorable to the judgment, the evidence showed that C.R. identified the chest containing the methamphetamine as belonging to Roberts, testified that she had observed Roberts using the chest for drug transactions, and knew that the notebook

belonged to Roberts because she saw Roberts in possession of it regularly and saw her mother write in it. The jury had the ability to decide whether it believed some, all, or none of the witnesses' testimony, especially that of C.R., regarding Roberts's possession of the methamphetamine. Using the appropriate factors as set forth in *Evans*, we find that there was a sufficient link between Roberts and the methamphetamine found in the house and the evidence was sufficient for the jury to have found that Roberts intentionally or knowingly possessed the methamphetamine. We overrule issue one.

*Delivery of Marihuana to a Child*

Roberts complains that the evidence was insufficient for the jury to have found that she delivered marihuana to a child because there was insufficient evidence that any substance given to C.R. was in fact marihuana. Roberts argues that this is because no marihuana was found during the search of Roberts's purse or the residence, no marihuana was admitted into evidence, and no testimony was given by a chemist identifying any substance as marihuana. Roberts argues that the only evidence of delivery of marihuana to a child came from C.R. and C.R. was not qualified to identify any substance she received from her mother as being marihuana.

Roberts also argues that C.R.'s testimony was the only evidence of delivery of marihuana and that the evidence presented to attempt to attack C.R.'s credibility should establish that no rational juror should have found Roberts guilty beyond a reasonable doubt. However, Roberts does not mention the testimony from the Department's

investigator that Roberts admitted to giving marihuana to C.R. to help with her anxiety. The witness's testimony that Roberts said she gave marihuana to C.R. is direct evidence of that fact. *See Hernandez v. State,* 698 S.W.2d 679, 680 (Tex. Crim. App. 1985) (*citing Bright v. State,* 556 S.W.2d 317 (Tex. Crim. App. 1977); *Stein v. State,* 514 S.W.2d 927, 933-934 (Tex. Crim. App. 1974).

Further, as discussed in Roberts's first issue, it was the jury's province to determine the credibility of C.R., and whether to believe some, all, or none of her testimony. *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). C.R. testified that she was familiar with the sight, smell, and taste of marihuana from prior experience. Viewing the evidence is the light most favorable to the judgment, we find that the evidence was sufficient for the jury to have found Roberts guilty of the delivery of marihuana to a child. We overrule issue two.

*Ineffective Assistance of Counsel*

In her third issue, Roberts complains that she received ineffective assistance of counsel because her trial counsel agreed to stipulate to the lab reports that indicated that the substance found at the residence was methamphetamine. The State's expert witness was unavailable to testify at trial. In order to prevail on a claim of ineffective assistance of counsel, Roberts must meet the two-pronged test established by the U.S. Supreme Court in *Strickland* that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Unless she can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142. In order to satisfy the first prong, Roberts must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* To prove prejudice, Roberts must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

An appellate court must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Id. (quoting Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). Claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus. *Id.* at 143 (*citing Bone v. State*, 77 S.W.3d 828, 833 n. 13 (Tex. Crim. App. 2002)). On direct appeal, the record is usually inadequately developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." *Id. (quoting Bone*, 77 S.W.3d at 833).

Roberts did not file a motion for new trial on the basis of ineffective assistance of counsel and the record is silent as to any potential strategy by her trial counsel as to

why he entered into an agreement with the State to stipulate to the reports. In this case, Roberts did not attempt to deny that the substance found in the residence was in fact methamphetamine, but sought to show that C.R.'s testimony was false in an attempt to distance Roberts from knowledge and possession of the methamphetamine. Nevertheless, the record is silent as to any specific strategy by Roberts's trial counsel and we will not speculate as to trial counsel's strategy. Because Roberts has not met her burden to establish the first prong in *Strickland*, we overrule her third issue.

*Admission of Evidence*

Roberts complains that the trial court abused its discretion in admitting the notebook that was found next to the chest with the majority of the methamphetamine because it constituted hearsay. We review a trial court's decision to admit evidence under an abuse of discretion standard. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will uphold the trial court's ruling if it is "reasonably supported by the record and is correct under any theory of law applicable to the case." *Id.*

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). A party's own statements, however, are not hearsay. TEX. R. EVID. 801(e)(2)(A); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999) (Rule of evidence 801(e)(2)(A) "plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."). A party's own

statements "are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Trevino*, 991 S.W.2d at 853. Additionally, "party admissions, unlike statements against interest, need not be against the interests of the party when made; in order to be admissible, the admission need only be offered as evidence against the party." *Id.*

C.R. testified that she had seen Roberts writing in the notebook and was familiar with her handwriting. C.R. testified that the columns and other writings that an officer testified contained terms commonly associated with the sale of controlled substances were in Roberts's handwriting. The notebook was offered to establish that Roberts was involved in the delivery of methamphetamine prior to the search, and to aid in affirmatively linking Roberts to the methamphetamine discovered during the search. As such, the notebook did not constitute hearsay. We overrule issue four.

*Conclusion*

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed January 8, 2015
Do not publish
[CRPM]



The State Of Texas
County Of Brazos
Before me    David McKinney
Through TDCJ card # 1911584
Given under my hand a seal of this office
9th day of April A.D. 2015

On or about April 2nd. A.D. 2013 at around
2:00 P.M., I was at my home, 7125 Timber Rd.
I heard a knock on my door. It was one
C.P.S. officer and one male and one female
S.T.O.P. officers. They informed me that they
were there concerning Carlee Roberts. I
told them that Calee did not live there and
had only been there once in the last 30 days.
They ask if they could come in. I told them
they were at the wrong house but I would be
glad to talk to them. I lead them through
four rooms of my home into the Living
room. After talking a few minutes, officer
Addams ask if he could search my home. I
ask if he had a search warrant or a warrant
for anybody. He said he did not. I said well
you can't, in fact you need to leave my home
now. He ask why can't I search your house?
Will I find marijuana in your house. I said
I don't know what you might find in my house.
There's been a lot of people here. He said oh

there is marijuana in your house? I said no I didn't say that, you said that, and you need to leave my house. He said I will not leave your house because you said you have marijuana here. I'm putting your house on lock down until I get a search warrent. I said, well if you don't have a search warrent, I'm free to leave right? He said thats right, but hold on a minute before you leave. He then kept me there for more than an hour. He then ask me where I was going? I said I was going to Burleson to pick up Carlee, at a drop off point, for an alturnitive school, and bring her back here. He said, oh she does live here? I said no, I'm picking her up for her mom, I've known her all her life and she likes to come here, because I have go carts and 4-wheelers and she likes to ride them. Her mom "Ginnie" will be picking her up here at 5:30 P.M. I said, infact you're making me late right now, I need to leave. He said how are you picking her up? I don't see a car. I said well I'm picking her up on my Harley if thats okay? She loves to ride on that too. As I said, he made me late and when I finally got there, Ginnie had already picked her up. When I got back home at 5:30 P.M. Ginnie was there talking to C.P.S., there was also another S.T.O.P. officer there now. After an

hour or so it was plain that C.P.S. was going to take Carlee. Once again I told them they should leave, and said, since you don't have a warrant we are free to leave, right? He "Addams" said yes, so we left in Ginnie's car. When we got past my neighbor's house "Joe Brown", I told Ginnie to stop and let me out. I snuk back through his land" heavily wooded as mine is also to see what they were doing. This was around 9:00 P.M. and I watched two S.To.P. forse officers going through my vehicle's and out buildings 3 hrs. before they got their warrant at 10:00 P.M. My neighbors also saw this. Ginnie was arrested 3 months later when she went to visit her sister in Johnson Co. I did a walk through a month later. Ginnie was charged with possesion with intent to deliever, through proxy. of 4.2 grams of meth. Ginnie Fay Roberts did not live there, had not lived there for 30 days or more. The drugs were not hers, never were hers, and she never had possesion of them. There was no finger print evidence. Everything found in my house was mine. Ginnie had no knowledge of the things in my home, because we had been split up for over a month. There are many wittnesses to this. Ginnie had very poor counsling and therefore recieved an excersive sentence.

Acts 1985, Leg. ch. 959, S1, eff. Sep. 1, 1985
Amended by Acts 1997, 75th. Leg., ch. 90, S1, Eff. Sep. 1, 1997

I David Paul McKinney T.D.C.J. #1911584, being
presently incarcerated in T.D.C.J. Hamilton Unit
~~Bra~~ Brazos Co. Tex. declare under Penality
of perjury, that the foregoing is true
and correct. Executed 4-9-2015

David McKinney

# SEARCH WARRANT

**THE STATE OF TEXAS** *

Warrant # 4913A -CW

**COUNTY OF JOHNSON** *

**THE STATE OF TEXAS** to the Sheriff or any Peace Officer of Johnson County, Texas or any Peace Officer of the State of Texas, GREETING:

WHEREAS, the Affiant whose name appears on the affidavit supporting the issuance of this Search Warrant is a Peace Officer under the laws of Texas defined by the Texas Code of Criminal Procedure (T.C.C.P.) Article 2.12(3) and did heretofore this day swear to and subscribe said affidavit before me which said affidavit is by this reference incorporated herein for all purposes and thereafter file said affidavit with me, and whereas I find that the verified facts stated by Affiant in said affidavit show that Affiant has probable cause for the belief they express therein and establish existence of proper grounds for issuance of this warrant; therefore, you are **COMMANDED** to enter the suspected place, including all out buildings, vehicles and curtilage described as single family dwelling approximately 0.2 miles northwest of the eastern most intersection of Main St. and Timber Rd, Alvarado, Texas. The residence is tan colored mobile home with a wooden porch and the front door faces southeast. There are rust colored shutters on one of the windows and has white underpinning. The residence has an attachment made of tan colored block and this section has a white metal roof. At the road there is a green mail box displaying the number 7125 on the wooden post and the driveway to the residence is located to the right of this mailbox. The physical address is 7125 Timber Rd., Alvarado, Johnson County, Texas, 76009 and to there search for:

A) Property specially designed, made, or adapted for or commonly used in the commission of an offense in accordance with the Texas Code of Criminal Procedure article 18.02 section 2; specifically, propane burning torches or canisters used in the consumption of illegal narcotics, plastic tubing altered for the ingestion of illegal narcotics, or objects used to smoke or inject illegal narcotics. Weight scales and packaging materials used in the distributing of illegal narcotics.

B) Drugs kept, prepared, or manufactured in violation of the laws of this state in accordance with the Texas Code of Criminal Procedure article 18.02 section 7; specifically, Possession of Marijuana the possession of which is a violation of the Texas Health & Safety Code, chapter 481, section 481.121.

Described in said Affidavit and to seize same.

Further, you are ORDERED, pursuant to the provisions of Article 18.10 of the Texas Code of Criminal Procedure (T.C.C.P.), to retain custody of any property seized pursuant to this Warrant, until further order of this Court or any other court of appropriate jurisdiction shall otherwise direct the manner of safekeeping of said property. This Court grants you leave and authority to remove such seized property from this county, if and only if such removal is necessary for the safekeeping of such seized property by you, or if such removal is otherwise authorized by the provisions of Article 18.10 of the T.C.C.P.. You are further ORDERED to give notice to this Court, as a part of the inventory to be filed subsequent to the execution of this Warrant, and as required by Article 18.10 of the T.C.C.P., of the place where the seized hereunder is kept, stored and held.

# SEARCH WARRANT

HEREIN FAIL NOT, but have you then and there this Warrant within three days, exclusive of the day of it's issuance and exclusive of the day of it's execution, with your return thereon showing how you have executed the same, filed in this Court.

**ISSUED THIS THE** ___9___ **day of** ___April___ , A.D., 2013, 7:42 o'clock P.M. **to certify which witness my hand this day.**

JUDGE C. C. "KIT" COOKE
SENIOR DISTRICT JUDGE
18th JUDICIAL DISTRICT OF TEXAS
SITTING FOR THE
413th DISTRICT COURT

_____
MAGISTRATE

THIS CHECK HAS A COLORED BACKGROUND AND CONTAINS MULTIPLE SECURITY FEATURES SEE BACK FOR DETAILS



**Johnson County**
2 N Main Street
Cleburne, TX 76033-5500
817-556-6305

First Financial Bank, NA
PO Box 537
Cleburne, TX 76033-0537

Operations Clearing

Check No: **97039**

| Vendor No. | Date | Check No. | Net Amount |
|---|---|---|---|
| 4294|73 | 02/10/2014 | 97039 | $***339.37 |

PAY  ***THREE HUNDRED THIRTY NINE DOLLARS AND 37/100

TO THE
ORDER
OF

DAVID C. MCKINNEY
1800 RIDGEMAR
CLEBURNE, TX 76031

 Debbie Rice
 Authorized

⑈97039⑈ ⑆111301122⑆ ⑈017642011⑈

Here is a copy of the check that was re-imbursed the drug money back to the owner of the home..
The check was dated 2 days before my trial... In my trial this money was used against me.. ———

Acct NO# 0320-00-0000.2100
Refund Ref Case # Stop 13035.1
vendor 4294/73

Ex 3
A-1

To Whom it May Concern

My name is DAVID Paul McKinney I am 66 yrs old Borned on February 11, 1947 Being in a clear and sober mind free of all drugs do freely + willingly Swear that anything + everything ever found in my home in any form of police or authority figure is mine and mine alone. I take total and full responsibilty for said things. They are mine and mine alone. And furthermore do swear before the Police and Courts that Miss Ginnie Fay Roberts had no knowledge or possission of said drugs. She was not living in my home nor had She I atleast 30 day Nor did her daughter Carle Roberts a very troubled 15 yr. old Girl.

Once again as this is the third time I have written a similar statement

I take full and total responsiabilty excuse me if any of the spelling is wrong please except this statement as is inspite of misspelled Words

David McKinney

PAMELA KAY MARIS
Notary Public
STATE OF TEXAS
My Comm. Exp. January 28, 2015

Pamela Kay Mari

Notary Public of Texas

Jimie Roberts 1906777
Robby Unit
12 FM 712
nalin TX
24 61

3614

Clerk of the Court
Abel Acosta
Court of Criminal Appeals
P.O. Box 12308 Capitol
Austin Texas

POSTAGE
FOREVER USA
FOREVER USA